**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darwin Harris, et al., | No. CV-21-01537-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| National Waterproofing & Roofing LLC, et al., | |
| Defendants. | |

Plaintiffs Darwin Harris and Jason McCoy (collectively, "Plaintiffs") bring this action against Defendants National Waterproofing & Roofing, LLC, and Kirk Poteet (collectively, "Defendants") to recover allegedly unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and allegedly unpaid minimum wages under Arizona state law. Plaintiffs also seek a declaratory judgment and damages arising from Defendants' allegedly retaliatory actions. Presently before the Court is Plaintiffs' Motion for Conditional Certification (Doc. 19), in which Plaintiffs seek to conditionally certify similarly situated workers as a class for purposes of pursuing a collective FLSA action under 29 U.S.C. § 216(b). The Motion is fully briefed (Docs. 19, 20, 32, & 33). For the following reasons, the Motion will be granted.

**I.      BACKGROUND**

Plaintiffs were or are employed as hourly-paid employees at National Waterproofing & Roofing, LLC ("NWR"), an Arizona company that provides roof restorations, roof coatings, and floor coatings for customers in several states, including

Arizona, Colorado, and Arkansas.[1] (Doc. 1 at 4–5). Each job takes approximately one to two weeks to complete, and many of the jobs require Defendants' employees to drive long distances to reach the job site. (*Id.* at 5). Prior to driving to a jobsite, Plaintiffs and other hourly-paid employees are expected to load the company truck, which typically takes between one-and-a-half to two hours. (*Id.*). Defendants paid Plaintiffs and other hourly-paid employees $10 per hour for the time it took them to drive to a jobsite, up to a maximum of ten hours. (*Id.*). If a drive was longer than ten hours, Plaintiffs and other hourly-paid employees were not compensated for the additional hours spent driving. (*Id.*).

Plaintiffs, who were both based out of Defendants' Arkansas location, assert that they and other hourly-paid employees employed by Defendants regularly worked over 40 hours per week and that they regularly worked hours—both overtime and non-overtime—which went "unrecorded and uncompensated." (*Id.*). On September 9, 2021, Plaintiffs filed the Complaint in this matter, asserting four claims: individual and collective action claims for violations of the FLSA's minimum wage and overtime provisions (Counts I and II); a violation of the FLSA's anti-retaliatory provision (Count III); and a violation of the Arizona Minimum Wage Act, A.R.S. § 23-363 (Count IV). (*Id.* at 10–15). Plaintiffs seek to pursue this case as a collective action and to conditionally certify the following class:

> All hourly-paid employees employed by National Waterproofing & Roofing, LLC, and Kirk Poteet, who worked over 40 hours in any week in which they also drove to a jobsite since September 9, 2018.

(*Id.* at 8–9; *see also* Doc. 19-1 at 1 & Doc. 20 at 6, 16). Defendants argue that conditional class certification is inappropriate because Plaintiffs have failed to demonstrate that they and the purported class members are "similarly situated" as is required under the law. (Doc. 32 at 5–11). However, if certification *is* warranted, Defendants alternatively request

---

[1] Plaintiff Harris worked for Defendants from August 2020 until June or July of 2021. (Doc. 1 at 4). Plaintiff McCoy began working for Defendants in November 2020 and still works for Defendants. (*Id.*). A third individual, Jessie Blackwell, was originally named as a Plaintiff in this suit but has since been dismissed from the case. (Doc. 31).

that Plaintiffs' notice-and-opt-in period be limited to sixty (60) days and that the proposed notice be amended in several ways. (*Id.* at 11–13).

## II.     LEGAL STANDARDS

The FLSA requires that employers pay their employees a minimum wage, 29 U.S.C. § 206(a), and an overtime wage equal to time and one-half for work exceeding forty hours per week. § 207(a)(1). "Any employer who violates the provisions of section 206 or section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation." § 216(b). A collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* Employees not named in the complaint who wish to join the action because they are similarly situated must give their consent in writing to the court in which the action is brought (*i.e.*, "opt in"). *Id.*; *see also Campbell v. City of L.A.*, 903 F.3d 1090, 1100 (9th Cir. 2018) (explaining § 216(b) and the collective action mechanism arising from it).

"Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not construed the term." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). "The majority of courts, including those within the District of Arizona, have adopted the two-tiered approach in deciding whether to grant FLSA collection action status." *Villarreal v. Caremark LLC*, No. CV-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) (internal quotations & alterations omitted). Under this approach, the first step is to "make an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Colson*, 687 F. Supp. 2d at 925 (citation omitted). If the plaintiffs "survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit." *Kesley v. Ent. U.S.A. Inc.*, 67 F.Supp.3d 1061, 1065 (D. Ariz. 2014) (quoting *Colson*, 687 F. Supp. 2d at 925). Following the close of discovery, the second step permits the defendant to move for decertification and the court "makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much

stricter standard to scrutinize the nature of the claims." *Colson*, 687 F. Supp. 2d at 925 (citation omitted). Here, Plaintiffs now seek this first step of conditional certification. Thus, at this juncture the Court is concerned only with determining whether the proposed class members are "similarly situated."

A plaintiff's burden at this notice stage is low. *See Barrera v. U.S. Airways Grp., Inc.*, No. CV-2012-02278-PHX-BSB, 2013 WL 4654567, at *2 (D. Ariz. Aug. 30, 2013) (internal quotation marks & citation omitted) (noting that standard at notice stage is "lenient . . . because the court has little evidence at this stage and the usual result is conditional class certification"). "At this first stage, the court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *2 (D. Ariz. Sept. 30, 2009) (internal quotation marks & citations omitted). "The court's determination at this first step is based primarily on the pleadings and any affidavits submitted by the parties." *Kesley*, 67 F.Supp.3d at 1065 (internal quotations omitted).

### III.    "SIMILARLY SITUATED" ANALYSIS

In support of their Motion, Plaintiffs rely on the allegations of their Complaint (Doc. 1), a declaration from Plaintiffs' attorney Josh Sanford (Doc. 19-6), and a declaration from Plaintiff Harris (Doc. 19-7) (the "Harris Declaration"). For purposes of this Court's "similarly situated" analysis, Attorney Sanford's Declaration has no evidentiary value because Mr. Sanford "has no personal experience with [Defendants'] employment practices or with the job duties of [an hourly-paid employee of Defendants]." *Colson*, 687 F. Supp. 2d at 929 (citation omitted). Thus, in determining whether conditional class certification is appropriate, the Court will only consider the allegations made in Plaintiffs' Complaint and the Harris Declaration.

As noted above, Plaintiffs must make "substantial allegations" that they and the putative class members "were together the victims of a single decision, policy, or plan." *Stickle*, 2009 WL 3241790 at *2. Although such a showing typically presents only a light

burden on the plaintiff, the first stage is "by no means automatic." *Colson*, 687 F. Supp. 2d at 925. Plaintiffs' allegations "need neither be strong nor conclusive," but they must show "that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id.* at 925–26 (citations omitted). The Court will not review the underlying merits of the action, as "[i]t is not the Court's role to resolve factual disputes [or] decide substantive issues going to the ultimate merits" at this stage of an FLSA suit. *Id.* at 926 (citations omitted).

Defendants argue that Plaintiffs failed to provide sufficient evidence that the proposed members were subjected to the same pay policies or practices because they offered only Plaintiff Harris' Declaration to support their argument. (Doc. 32 at 5–8). Defendants assert that Plaintiff Harris only had knowledge of the pay policies and practices used at the Arkansas branch where he was based, and that his Declaration is thus insufficient to demonstrate that Defendants' hourly employees in *other* states—namely, those employees based out of the Arizona office—were subjected to the same. Without "corroborating declarations from potential class members from other NWR locations or teams demonstrating that hourly employees . . . outside of Arkansas were similarly situated," Defendants argue that Plaintiffs have failed to meet their burden. *Id.* at 8.

As an initial matter, the fact that Plaintiffs submitted only one declaration does not necessarily mean that Plaintiffs failed to meet their burden. Although Defendants do not explicitly make such an argument, they nonetheless cite to several cases in which courts in the Ninth Circuit conditionally certified classes after the plaintiffs offered multiple declarations from other potential class members. (Doc. 32 at 7–8). Defendants summarize these holdings by stating that "plaintiffs must typically submit multiple declarations in support of their request for conditional certification." (*Id.* at 7). This Court has expressly rejected such a rule, noting that the Ninth Circuit "has not established a bright line rule that conditional class certification motions must be supported by multiple declarations." *Scales v. Info. Strategy Design Inc.*, 356 F. Supp. 3d 881, 886 (D. Ariz. 2018). Rather, it is *the*

*quality* of the declaration or declarations, not the quantity of them, which controls in determining whether conditional class certification is appropriate under the "similarly situated" test.[2] *Id.* Thus, the question is whether Plaintiff Harris' Declaration, on its own, adequately supports Plaintiffs' allegations and sufficiently demonstrates that the purported class members are similarly situated.

Defendants cite to two cases—*Colson*, 687 F. Supp. 2d at 914 and *Longnecker v. American Express Co.*, No. 2:14-cv-0069-HRH, 2014 WL 4071662 (D. Ariz. Aug. 18, 2014)—which are helpful to this Court's analysis. In *Colson* and *Longnecker*, the plaintiff employees submitted declarations to support their requests for conditional certifications of nationwide classes comprised of themselves and employees working in similar roles in other states. *Colson*, 687 F. Supp. 2d at 917; *Longnecker*, 2014 WL 4071662 at *2–*3. In both cases, this Court found that the declarations were helpful to the extent they described the plaintiffs' own experiences, but that they offered only speculation with respect to how the defendants' treated their employees in other states. *Colson*, 687 F. Supp. 2d at 928 ("While Ms. Colson's declaration has some value in describing her own experience, it has no probative value in establishing that she, along with other SMRs across the country, 'were together the victims of a single decision, policy, or plan.'"); *Longnecker*, 2014 WL 4071662 at *4–*5 (finding that plaintiff's declaration showed she was "similarly situated to . . . employees [in her own department]" but that it "offered nothing more than speculation that she [was] similarly situated to employees in other call centers who have similar job duties."). The plaintiffs did not interact with employees in other states and therefore lacked any knowledge of how they were treated by the defendant companies.

---

[2] "Although, perhaps as a matter of best practices, plaintiffs seeking conditional class certification should endeavor to obtain declarations from other potential class members, . . . such additional declarations are not necessarily required when the named plaintiff's declaration adequately supports his allegations." *Scales*, 356 F. Supp. 3d at 887. Here, supporting declarations from other hourly-paid employees of Defendants—particularly employees based out of Defendants' Arizona office—would have certainly been helpful.

*Colson*, 687 F. Supp. 2d at 928–29 ("[The Plaintiff] worked only in Defendant's Oregon office and her declaration reveals that she had minimal contact with SMR employees from other states. To the extent Ms. Colson has provided information relating to . . . SMRs outside [of] Oregon, it is based on nothing more than her opinions, which are vague and appear to be based on unspecified hearsay from unidentified sources"; "[H]er filing is filled with statements that lack personal knowledge."); *Longnecker*, 2014 WL 4071662 at *5 ("It is not reasonable to infer that [the plaintiff] would have learned about other employees in other locations, particularly in light of the evidence . . . that employees in one call center rarely interacted with employees in other call centers."). Given the plaintiffs' lack of knowledge as to employee practices in other states—and the fact that neither of the plaintiffs submitted declarations from employees in other states—this Court was unable to find that the plaintiffs had demonstrated that they were similarly situated with other class members and therefore denied the plaintiffs' requests for certification. *Colson*, 687 F. Supp. 2d at 929–30; *Longnecker*, 2014 WL 4071662 at *5–*6.

Here, Defendants argue that *Colson* and *Longnecker* are on point because the Harris Declaration—the only declaration submitted by Plaintiffs—is "not sufficient evidence of a company-wide practice because Harris' knowledge is restricted to the Arkansas branch in which he was based." (Doc. 32 at 6). While this Court ultimately agrees with Defendants, the Court notes that the present case is at least somewhat distinguishable from *Colson* and *Longnecker* because Defendants' hourly-paid employees, including Plaintiff Harris, traveled out of state to reach many—if not most—jobsites. (Doc. 1 at 5; Doc. 19-7 at 2). Specifically, Plaintiff Harris avers that he worked on jobsites in Arizona, Colorado, California, South Dakota, Arkansas, Michigan, Iowa, and Oklahoma. (Doc. 19-7 at 2). In doing so, Plaintiff Harris asserts that he "worked alongside" other hourly-paid employees who were performing "the same or similar job duties" as he was. (*Id.* at 3, 4). He avers that he had discussions with them concerning hours and pay and that he is therefore "personally familiar with the conditions under which other hourly employees worked." (*Id.* at 2, 4). This is different than *Colson* and *Longnecker*, where the plaintiffs worked *exclusively* at

their "home" branches and had no opportunity or reason to contact or otherwise interact with employees in other states. *Colson*, 687 F. Supp. 2d at 928; *Longnecker*, 2014 WL 4071662 at *5. In this case, given the frequent out-of-state travel, Plaintiff Harris at least appears to have had *an opportunity* to interact with Defendants' non-Arkansas employees.

However, after carefully reviewing the Complaint and the Harris Declaration, the Court notes that Plaintiff Harris—rather glaringly—fails to explicitly specify that the other hourly-paid employees with whom he worked alongside and had discussions with were actually non-Arkansas employees. Plaintiff Harris even mentions three such employees by name—Jason McCoy, Guy Hill, and Kerry Clayborn—yet fails to specify whether they were based out of Defendants' Arkansas or Arizona office. (Doc. 19-7 at 2). As a result, there is at least some possibility that the "other" employees referenced in the Harris Declaration were all from the same Arkansas branch, that Plaintiff Harris never actually interacted with Defendants' employees from other states, and that Plaintiff Harris had no personal knowledge of how Defendants treated its non-Arkansas employees. Indeed, such is true with respect to at least one of the employees mentioned by Plaintiff—Mr. McCoy—who is a resident of Pope County, Arkansas. (Doc. 1 at 3).

Neither party makes any mention of whether Defendants had a custom or policy providing that its employees work only with other employees from the same branch—that is, that jobs are assigned solely to employees from either the Arkansas or Arizona branch and that at any given jobsite there are only hourly-paid employees hailing from one branch. The existence of such a custom or policy would be strong evidence that Plaintiff Harris only interacted with other Arkansas-based employees and that he lacks personal knowledge of Defendants' payment practices with respect to its Arizona-based employees. Thus, it is strange that Defendants offered no explanation of how NWR assigned jobsites to its employees. Indeed, Defendants even submitted a declaration from NWR General Manager John William Miller II, the individual responsible for the company's "operations, including scheduling jobs, assigning crews, and supervising employees." (Doc. 32-1 at 2). Yet Mr. Miller's Declaration says nothing about whether the company's Arkansas-based

employees were kept independent from its Arizona-based employees.

That said, this Court cannot presume the *absence* of such a custom or policy merely because Defendants failed to address the issue. It is perfectly reasonable to imagine that Defendants had a policy of keeping its Arkansas and Arizona employees separate, and that Plaintiff Harris never actually worked with any non-Arkansas employees. Given that the burden lies with Plaintiffs to demonstrate that they are similarly situated to the individuals in their proposed collective-action class, *see Colson*, 687 F. Supp. 2d at 928, it was Plaintiffs who were tasked with proving to the Court that Plaintiff Harris actually worked and had discussions with *non-Arkansas* employees and that he therefore had personal knowledge that Defendants' allegedly illegal pay practices applied to them as well. As it stands, Plaintiffs failed to meet that burden because, although the Harris Declaration has some value in describing Plaintiff Harris' own experience as an Arkansas-based employee, "it has no probative value in demonstrating that [he], along with [Defendants' non-Arkansas-based employees], 'were together the victims of a single decision, policy, or plan.'" *Id.* at 928–29 (citation omitted). As in *Colson* and *Longnecker*, this Court is unable to find that Plaintiffs have demonstrated that they were similarly situated with other proposed class members and therefore denies Plaintiffs' request for certification. *See id.* at 929–30 ("Although the burden . . . is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute.").

///
///
///
///
///
///
///
///
///

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Conditional Certification (Doc. 19) is **denied**. This case will proceed as a single action brought by Plaintiffs Darwin Harris and Jason McCoy against Defendants NWR and Kirk Poteet for violations of the FLSA and the Arizona Minimum Wage Act.

Dated this 7th day of September, 2022.

Honorable Steven P. Logan
United States District Judge